**DREHER LAW FIRM**
Robert Scott Dreher (CSB# 120527)
350 W. Ash, Suite 101
San Diego, CA  92101
Telephone: (619) 230-8828
*Scott@DreherLawFirm.com*

**MILLER LAW FIRM**
Matthew R. Miller (CSB# 194647)
Carlos Americano (CSB# 257070)
835 Fifth Ave., Suite 301
San Diego, CA  92101
Telephone: (619) 687-0143
*Matt@MRMlawfirm.com* / *Carlos@MRMlawfirm.com*

Attorneys for Plaintiff ZEELEE SEGURA

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZEELEE SEGURA, an individual,<br><br><br>Plaintiff,<br><br>v.<br><br>CITY OF LA MESA, a municipal entity; LA MESA POLICE DEPARTMENT, a municipal entity; and UNKNOWN LA MESA CITY & POLICE DEPARTMENT PERSONNEL (DOES 1-25) inclusive,<br><br><br>Defendants. | Case No. **'21 CV0565 JM   MDD**<br><br>**COMPLAINT for DAMAGES AND INJUNCTIVE RELIEF for:**<br><br>1. **VIOLATION of the FIRST AMENDMENT to the UNITED STATES CONSTITUTION;**<br><br>2. **VIOLATION of 42 U.S.C. §1983 - EXCESSIVE FORCE;**<br><br>3. **VIOLATION of 42 U.S.C. §1983 – FAILURE to TRAIN, SUPERVISE, and DISCIPLINE (*Monell*)**<br><br>4. **VIOLATION of the BANE CIVIL RIGHTS ACT (Civ. Code §52.1)**<br><br>5. **BATTERY BY PEACE OFFICER;**<br><br>6. **NEGLIGENCE;**<br><br>7. **INTENTIONAL INFLICTION of EMOTIONAL DISTRESS; and**<br><br>8. **VIOLATIONS of the CALIFORNIA CONSTITUTION**<br><br>***Jury Trial Requested.*** |

## INTRODUCTION

*"When I see injustice happening I feel compelled to speak up,"* says Zeelee Segura. She went to the front of a peaceful protest at the La Mesa Police Department on May 30, 2020, three days after a local young Black man, Amaurie Johnson, was assaulted and beaten by La Mesa Police, because he is Black. Just five days after George Floyd was killed by Minneapolis police, because he was Black. Eleven weeks after Breonna Taylor's killing by Louisville police, because she was Black. Three months after Ahmaud Arbery was stalked and killed while jogging. Because he was Black.

*"I was the only Black girl in my grade school. The only Black girl on the soccer field. Everyone pointed out my different color, and other kids said they couldn't sit next to me because I was "Rosa Parks." I began to hate myself for being different. And I didn't want to hate myself. In college I would hear guys yell "Ugly N\*ggas!" at Black girls walking across our campus. Campus police patrolled much more heavily the areas where Black students lived, even though we weren't doing anything different than any other students. After a lifetime of that it's easy to become numb to it, because you see it every day. As I watched the video of Ahmaud Arbery being shot I broke down and cried. Then it happens to someone else, a month later. And then again, another month later. When I see that happening repeatedly to people that look like me, I realize that on any one of my own daily runs, Ahmaud Arbery could be me.*

*My response is, I want to get out there and make a difference not only for my own safety, but for people and other generations like me. I don't want to die. I don't want anyone to die. So I protest. Peacefully. Speaking my mind on what needs to change. When the police make it clear that it's time to leave, I'll leave. To be shot in the face as we're doing what we're told, playing by the 'rules,' proves that the rules are messed up. It makes me afraid. I thank god every day that it wasn't a real bullet that hit me in the face. I realize it could have been. It could yet be. I know things are messed up; I've seen it since I was in grade school. But that shouldn't be, and I want to help ensure it's not, anymore. So I protest.*

The City of La Mesa and its Police Department ("LMPD") took Ms. Segura's rights from her when they shot her in the face at a legal, peaceful, protest, and she's here, now, stepping to the front again, asking this Court to order the return of those rights.

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §1331 (federal question) and 28 U.S.C. §1343 (civil rights), supplemental jurisdiction pursuant to 28 U.S.C. §1367, and jurisdiction to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§2201 & 2202 and F.R.Civ.P. 57.

2.      Venue is proper in this District pursuant to 28 U.S.C. §1391, as all Defendants reside, and the events giving rise to the claims herein occurred, here.

## **IDENTIFICATION OF PARTIES**

3.      Plaintiff ZEELEE SEGURA is an individual who has grown up, and has family and friends, in the City of La Mesa, in the county of San Diego, California.

4.      Defendant CITY OF LA MESA is a municipal corporation, incorporated in 1912 under the general laws of the State of California, which derives its municipal authority from those laws in all respects not governed by city ordinance.

5.      Defendant LA MESA POLICE DEPARTMENT ("LMPD") is a local government entity and an agency of the City of La Mesa. The City of La Mesa is liable for the actions of LMPD.

6.      The City of La Mesa, through its agents, employees, policymakers, Police Department, Police Officers, and Police Chief, has engaged in a pattern and practice of subjecting individuals to excessive force, and tolerated and fostered such conduct by failing to supervise and properly train its officers and staff; failing to implement and use the training that was provided; failing to create and enforce adequate use-of-force policies; failing to document, investigate and discipline officers who engaged in misconduct; and by ignoring and implicitly condoning misconduct that occurred and creating an atmosphere in which it there is no accountability for such misconduct.

7.      The true names and capacities, whether individual, associate or otherwise, of City of La Mesa and La Mesa Police Department employees and officers who were acting within the course and scope of their employments and agencies are unknown to

Plaintiffs. She therefore sues them here as DOE Defendants 1 – 25, including DOES 1, 2 and 3 who were the LMPD Officers stationed on the mezzanine with rifles and one of whom, DOE 1, is the Police Officer who, in violation of rules, regulations, and laws, shot Ms. Segura in the face for no reason. Defendant DOES 4 - 25 are others who assisted, facilitated, concealed, and/or failed to document, address or prevent such actions. Plaintiff requested the name of the officer who shot her, but despite its regulations requiring that every Officer who fires such a projectile be identified and such event recorded and documented, the City has failed to disclose such. Each Doe Defendant was acting with the consent, permission, and authorization of each and every other defendant, and is responsible for the events, actions, facts, and damages alleged herein.

8.     Defendants' actions were undertaken under color of law in the execution of customs, policies, and practices of the City of La Mesa and LMPD, and were joined or implemented by the other Defendants. Each Defendant ratified, approved, caused, permitted, and is liable for the resulting injuries by participating in said conduct and/or acting jointly or conspiring with others. The City is obligated, under Gov. Code §815.2 and §825(a), to pay compensatory damages awarded against the individual defendants. Thus, defendants are jointly and severally liable for any damages award.

9.     Plaintiff complied with Gov. Code §910 by submitting a Claim to the City on September 11, 2020. The City didn't bother to read or respond to the Claim. Instead,

its handling was delegated to an outside contractor who ignored the Claim for nearly three months, then mailed Plaintiff a letter informing her that it had been ignored.

## FACTS

10.    On May 25, 2020 George Floyd, an unarmed Black man, was killed by Minneapolis police officer Derek Chauvin. Chauvin kneeled on Mr. Floyd's neck for nearly nine minutes, ignoring Mr. Floyd's pleas of "*I can't breathe!*" With a cop's knee on his neck, Mr. Floyd lost consciousness and died. Video of this murder sparked outrage, heartache, and waves of protests in the United States and abroad.

11.    Mr. Floyd's death followed two other unjustifiable killings of Black Americans -- the shootings of Breonna Taylor and Ahmaud Arbery. These killings sparked massive demonstrations by people speaking out against the racially-motivated violence and injustices that Black people constantly face throughout this country.

12.    On May 27, 2020, two days after Mr. Floyd's death, an LMPD officer assaulted, pummeled, and for good measure arrested Amaurie Johnson, a young Black man, at a local trolley stop for nothing more than being Black at a trolley stop. Video of the assault went viral, adding a local element to the outrage and frustration which had already been growing.[1] Citizens had had enough -- a public protest was scheduled for May 30, 2020.

---

[1]  CBS News, Demonstration Held in La Mesa Following Video Showing Confrontation Between Officer and Black Man, (5/29/2020), https://www.cbs8.com/article/news/local/demonstration-held-outside-la-mesa-police-department-following-video-showing-confrontation-between-an-officer-and-a-black-man/509-2e8b7b95-3835-4dad-a3bd-6f3c40da74eb

13.     Ms. Segura, a Black woman, was sickened and angered by these events. She decided to add her voice to the voices of those Americans who were exercising their constitutional rights to peacefully protest racial injustice by attending the event. This protest, like others around the USA at this time, was designed to communicate the notion that these racist beatings and killings, at the hands of police officers, need to stop.





14.    On May 30, 2020, Ms. Segura called her friend Zoe. "*There's a BLM protest today downtown. You want to go?*" she asked. *"Yes!"* said Zoe. So they met and made cardboard signs they would carry and display at the protest. Ms. Segura's sign read:



15.    Then they drove to the shopping center adjacent to the La Mesa city government buildings, parked the car, and walked around City Hall and the Post Office into the wide alley that runs between those City Hall and Post Office buildings on one side, and the LMPD building on the other. They proceeded along the alley and arrived at the corner patio comprising the LMPD entrance at about 4:35 pm.



16.    Ms. Segura moved through the sparsely-spaced protesters adjacent to the LMPD headquarters, then up the zigzag disability ramp to the entrance patio and the front of the group. The entry doors were blocked by a line of uniformed LMPD Officers and San Diego County Sheriff's Department deputies.

17.    Ms. Segura and the people around her were unarmed, peaceful, energetic, loud, earnest, but unthreatening. They cheered, displayed signs, listened to speeches advocating racial equality, and chanted slogans such as: *"What do we want? **JUSTICE!** When do we want it? **NOW!**" and "Say his name: GEORGE FLOYD!" "Say her name: BREONNA TAYLOR!" "Say his name: AHMAUD ARBERY!"*

1
2
3
4
5
6
7
8
9
10
11



12
13
14
15
16
17

18.    As protesters continued to arrive, the LMPD Officers on that line were ordered to "*Gear up!*" One by one the police officers went inside the LMPD Station and were replaced by what became a tight phalanx of officers swaddled in full riot gear -- helmets, face guards, gas masks, body armor, shields, gas cannisters, and weapons.

18
19
20
21
22
23
24
25
26
27
28

19.     LMPD officers with rifles, scopes, helmets, and gas masks appeared on the second-floor mezzanine above the crowd, peering over the railing and randomly aiming and showing their armaments. They took on the appearance of sharpshooters.



20.     In response to this intimidating and hostile message of aggression, protesters began shouting "*White people to the front! Protect our brothers & sisters of color!*" and they organized themselves in rows between the LMPD army and the Black attendees. Shortly before 6 pm, though there were no audible verbal warnings of such from LMPD, LMPD began mobilizing to take aggressive and violent action against the peaceful crowd in order to disperse the protesters from the area.

21.     *"They [LMPD] didn't make an announcement,"* said a La Mesa resident who was present at and witnessed the situation but wasn't part of the protests. She lived nearby and had been out for a walk, saw the gathering, and stopped near the crowd at the LMPD station to watch. "*If somebody would have said 'you need to leave,' I would have left. No one told me to leave or that they were going to use force on a crowd that, from what I could see, was peaceful at that moment.*"



22.    "*Are you going to use teargas on us?*" Ms. Segura heard someone in her vicinity query one of the officers, who stood only about 5 feet away.

The officer responded by nodding his helmeted head.

"*On a scale of one-to-ten, how much will it hurt*?" the person asked.

"*About an 8*," said the officer in a low voice, without looking at them.

23.    Hearing this, Ms. Segura and the people around her linked arms, huddled together, and put their faces down, bracing themselves and hoping to lessen the discomfort of the gas. After several minutes and with no discernible public warning, the LMPD inundated the area with teargas.





24.     Realizing that it would be wise to end their protests and leave the site in order to avoid suffering more teargas, Plaintiff and the other protestors began moving away from the front of LMPD Station to exit the scene.

25.     When Ms. Segura reached bottom of the zig-zag ramp and stepped back into the wide alley, she turned to face the front of the LMPD Station and the armed officers guarding it, and began walking backwards slowly, continuing <u>away</u> from the LMPD building and the protest area, displaying her sign as she moved. The crowd thinned.

26.     The exiting protesters were moving in both directions along and out of the alley below, emptying into the parking lots and streets of the area and away from the LMPD second floor mezzanine, on which perched the LMPD rifle-bearing officers. LMPD body camera film of the scene at this time shows that, as the crowd was dispersing,

the LMPD officers posted on that mezzanine were randomly, aggressively and repeatedly firing their rifles over the top of the mezzanine wall at the departing protestors. That film footage also shows that these officers' body-worn cameras were deliberately positioned so as to avoid documenting at where, what, why, and at whom they were shooting.

27.  Ms. Segura continued backing across the wide alley <u>away</u> from the LMPD building. When she reached the front wall of the US Post Office building which marks the far side of the alley, she spun her body to stroll forward along that wall continuing her path away from the LMPD and its armed mezzanine and front patio, all the while showing her cardboard sign. By this time most of the protesters had left the area.

28.  When she arrived to within a few yards of the far corner of the Post Office (more than 40 yards from the front entrance, and nowhere near anyone who was engaging with LMPD officers), around which she would move out of the officers' sight and towards the parking lot where her car was parked, she paused briefly to check behind her – was Zoe there?

29.  As she turned, her gaze passed upwards along the mezzanine and its three helmeted, rifle-bearing LMPD officers. She saw a flash of bright and black, as a potentially-deadly projectile or bullet fired by one of the officers slammed Ms. Segura in the face. She staggered, cried out and was knocked to a knee on the ground, stunned, shocked, and in pain. Her lip swelled, tripling in size, her head ringing and hurting.




30.    The LMPD's inability, or unwillingness, to handle peaceful protestors and its lack of adequate training have been documented by an uninvolved third-party.[2] Although officers were aware that the demonstration was scheduled for May 30, 2020, LMPD leadership did nothing to prepare them for how to respond to protestors without violating citizens' First Amendment rights to protest and to advocate for racial justice.

31.    As the demonstration grew, LMPD leadership shrank. Its officers had received zero training for crowd control tactics. So, instead of using proper techniques, the tactical commander approved deliberate escalation of the situation, including the random deployment of chemical agents into the crowd without ensuring proper notification or warning, and without any rules or guidance on whom, or why, or when, to shoot someone. He also approved the random deployment of Kinetic Impact Projectiles ("KIPs") — commonly called "bean bags" "foamed tipped projectiles," or "less-lethal" projectiles — at protesters, especially Black people such as Plaintiff.[3] LMPD's failure to follow proper guidelines was so prodigious, and its actions so random, that they shot a bystander who wasn't participating in the protests.[4]

---

[2]   Karen Pearlman, San Diego Union-Tribune, (Jan. 24, 2021, 12:00 PM), Hillard-Heintze Cites Lapses in Leadership, Training, and Communication, https://www.cityoflamesa.us/AgendaCenter/ViewFile/Item/5391?fileID=13691

[3]   NBC 7 Staff, NBC, (May 20, 2020, updated on Dec. 8, 2020, 3:10 PM), Photos: La Mesa Protest on May 30, 2020, https://www.nbcsandiego.com/news/local/photos-george-floyd-protests-spill-onto-san-diego-streets/2336348/

[4]   David Gotfredson, CBS 8, Second Woman Shot in Face With 'Less-lethal' Police Projectile, (June 2, 2020, 8:16 PM), https://www.cbs8.com/article/news/local/second-woman-shot-in-face-with-less-lethal-police-projectile/509-2a73ac03-ef01-4bae-b728-6ac02b9c724a; See also Christina Bravo, 7 San Diego, Woman Struck By Projectile During La Mesa Protest Sues Officer, City, (Dec. 15, 2020, 3:26 PM), https://www.nbcsandiego.com/news/local/woman-struck-by-projectile-during-la-mesa-protest-sues-officer-city/2472072/

32.     These "less lethal" weapons cause far more serious harm than their name suggests. In fact, the moniker "less lethal" is dangerously misleading. Such projectiles are the cause of many serious injuries and deaths every year. In a study analyzing the morbidity and mortality associated with "less lethal" projectiles from January 1, 1990, to June 1, 2017, researchers found 71% of people struck by KIPs suffered severe injuries.[5] Another La Mesa protester, a 59-year old Black woman named Leslie Furcron, has lost an eye as a result of the Defendants' use that day of "less lethal" beanbag projectiles.[6]

33.     The LMPD's attack on Ms. Segura on May 30, 2020 was unconstitutional under both the U.S. and California Constitutions, and Ms. Segura has suffered grievous harm as a result. Plaintiff believes she was targeted by the Defendants because she is Black. She brings this action to recover for her injuries. But Ms. Segura also seeks prospective and injunctive relief to ensure that she and her fellow protesters will be able to exercise their constitutional rights in the future to engage in peaceful protest without fearing for their health or safety. The LMPD is unequipped to deal with peaceful protests, and on May 30, 2020 they didn't even try.

---

[5]   Rohini J Haar, Vincent Iacopino, Nikhil Ranadive, Madhavi Dandu, & Sheri D Weiser, <u>Death, injury and disability from kinetic impact projectiles in crowd-control settings: a systematic review</u>, BMJ Open (2017), <u>https://bmjopen.bmj.com/content/bmjopen/7/12/e018154.full.pdf</u>; *See also* Liz Szabo, Kaiser Health News, <u>Police Using Rubber Bullets On Protesters That Can Kill, Blind Or Maim For Life</u>, <u>https://www.kpbs.org/news/2020/jun/03/police-using-rubber-bullets-protesters-can-kill-bl/</u>

[6]   *See*, *Furcron v. City of La Mesa* (SDSC Case # 37-2020-00045018-CU-CR-CTL); at least 3 other peaceful protesters were illegally shot by law enforcement at that La Mesa protest and have also filed suit: *Michelle Horton* (USDC #21CV400 H BGS; *Delane Hurley* (SDSC# 37-2021-00002819-CU-PO-CTL); *Tyler Astorga* (SDSC #37-2021-00000450-CU-CR-CTL).

34.     Defendants have deliberately and intentionally created a policy of enabling, encouraging, and tolerating the willful escalation of minor situations into confrontational disasters without regard to the rights of citizens acting lawfully, to the detriment of citizens, the City, and LMPD. Despite proffering purported "policies" against such behaviors, the City fails to teach its Officers not to foster situations that allow them to meaninglessly assert "authority" whenever possible, and implicitly permits or condones the attacking of innocent citizens under color of authority without justification.

35.     The use of excessive force on Plaintiff was consistent with, and a result of, deliberate indifference to the training needs of LMPD personnel, as well as a practice/custom among LMPD and others of using excessive force on peaceful protestors (i.e., individuals not suspected of committing a serious crime, not posing an immediate threat of harm to officers or others, and not resisting or fleeing arrest) in violation of the First, Fourth, and Fourteenth Amendments. The use of less-lethal force for mere "crowd control" purposes, regardless of whether protestors' individual actions justify such use, results in routine constitutional violations and is unreasonable. It chills First Amendment rights by discouraging the public from engaging in any public protests. It constitutes excessive force under the Fourth Amendment. And it violates substantive due process, because the use of less-lethal force on peaceful protestors "shocks the conscience."[7]

---

[7]   See, *Nelson v. City of Davis*, 685 F.3d 867, 885 (9th Cir. 2012); *BLM Seattle-King Cnty. v. City of Seattle Police Dept.*, No. 2:20-CV-00887-RAJ, 2020 WL 3128299, at *3 (W.D. Wash. June 12, 2020).

36.     Ms. Segura wants to be able to protest peacefully again in the future, and intends to do so should the need arise. But because of Defendants' actions, she is afraid now of what may happen to her at the hands of police officers who feel emboldened by the lack of training and absence of any negative recourse for their unconstitutional, illegal, and dangerous conduct. Nobody should have to be afraid to use the rights given to them by the Constitution.

### FIRST CLAIM FOR RELIEF
**Violation of the First Amendment to The United States Constitution
(42 U.S.C. §1983)
Against All Defendants**

37.     Ms. Segura incorporates here the allegations contained in ¶¶1 – 36 above.

38.     Defendants are "persons" within the meaning of 42 U.S.C. § 1983. Defendant LMPD Officer DOE 1, who shot Plaintiff, acted under color of state law and within the course and scope of employment in his capacity as a law enforcement officer under Defendant City of La Mesa and LMPD's authority and control.

39.     Ms. Segura's rights to speak, assemble, protest, and demonstrate peaceably are all protected activities under the First Amendment of the U.S. Constitution. As the U.S. DOJ stated recently, "First Amendment protection is at its apex when citizens seek to engage in core political speech in a traditional public forum." (Brief for the United States as *Amicus Curiae* Supporting Appellants and Urging Vacatur, *Givens v. Newsom*, No. 20-15949, 2020 WL 3393978 at *13 (9th Cir. June 10, 2020)).

40.     On May 30, 2020, Plaintiff was exercising her First Amendment right to express herself by peacefully participating in a peaceful protest at the La Mesa Police Department. Plaintiff's expression was on a matter of public concern (police brutality and racism), in a traditional public forum and did not violate any law. Any reasonable law enforcement officer knew or should have known this to be an established right.

41.     Defendants violated Ms. Segura's First Amendment rights when they declared the lawful protest to be unlawful without justification and by using excessive force (teargassing the crowd and shooting Plaintiff in the face with a deadly projectile despite the peaceful nature of her actions) to disperse such assembly and chase Plaintiff from it as she was already departing. Defendants' decision to shoot teargas and deadly projectiles into a peaceful assembly and at Plaintiff violates the First Amendment in at least four ways: (i) unconstitutional retaliation for expressive conduct protected by the First Amendment; (ii) violation of the right to speak, peaceably assemble, and associate; (iii) unconstitutional restriction on use of a traditional public forum; and (iv) unconstitutional content- and viewpoint-based discrimination.

42.     Defendants' actions were not a reasonable time, place, or manner restriction on Plaintiff's speech. Defendants' actions against peaceful protestors, including Plaintiff, would, are designed to, and do chill a person's ordinary desire and intent to engage in activity protected by the First Amendment.

43.     With respect to Defendant Officer DOE 1, he engaged in his conduct intentionally, knowingly, willfully, wantonly, maliciously and in reckless disregard of Plaintiff's constitutional rights, and is therefore liable to Plaintiff for punitive damages.

44.     The City of La Mesa's and LMPD's adoption, and/or failures to adopt, policies, practices, and customs that have caused the injuries sustained by Plaintiff such as (1) permitting the use of "less lethal" force and the types of force described in the lawsuit to control and suppress peaceful demonstrations; (2) failing to properly train, supervise, and discipline its officers with respect to the First Amendment and the rights of persons to exercise their First Amendment rights; (3) failing to properly train, supervise, and discipline its officers with respect to community policing, community engagement and biased policing; (4) failing to properly train, supervise, and discipline its officers on the use of force; (5) failing to properly train, supervise, and discipline its officers with respect to crowd-control duties; (6) failing to document the use and deployment of deadly force and, indeed, deliberately preventing such documentation; and (7) turning a blind eye towards conduct which violates proper rules, training, and procedures for dealing with peaceful protests and protesters.

45.     The City of La Mesa and LMPD have not disciplined any officers for their violations of Plaintiff's, and others', First Amendment rights. In failing to act, Defendants confirm their culture of tolerating and condoning violations of the First Amendment by its officers, including Defendant Officer DOE 1 who shot Plaintiff.

46.    The above policies, customs, practices and customs were known, authorized and approved by the City. Moreover, Defendants' actions were authorized by policy- and decision-makers for the City of La Mesa and LMPD.

47.    The Defendants knew or should have known that their policies (and lack thereof), practices, customs, and their failures to train, supervise and discipline their officers would and do result in violations of citizens' rights. Despite Defendants' actual or constructive notice of the violations and shortcomings of their policies, customs and practices, they have failed to take appropriate action, thereby allowing the continuation of such policies, customs and actions, thus causing the harms alleged herein.

48.    Defendants' conduct was, and continues to be, a legal cause of Ms. Segura's enduring pain and suffering and has the effect of chilling her ability to participate in future protests and other activity protected by the First Amendment. These violations of the First Amendment are continuing and causing irreparable harm.

**SECOND CLAIM FOR RELIEF**
**Violation of the Fourth Amendment to The United States Constitution**
**(42 U.S.C. §1983)**
**Excessive Force**
**(Against Defendant DOE Police Officers)**

49.    Ms. Segura incorporates here the allegations contained in ¶¶1 – 48.

50.    The use of force during or to effect an arrest, an investigatory stop, or engage in any other "unreasonable seizure" of a person's liberty is analyzed under the Fourth Amendment and may be actionable under 42 U.S.C. § 1983, which provides that:

> *Every person who, under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia, subjects or causes to be subjected any Citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress…*

51.    The Supreme Court held in *Graham v. Connor,* 490 U.S. 386 (1989), that uses of force should be evaluated from the standpoint of "objective reasonableness." In *Graham*, the court held that as to evaluating uses of force there is no generic standard, but rather a multi-factor inquiry, and has recently affirmed that the use of force is indeed a "seizure" that violates the Fourth Amendment (*Torres v. Madrid,* 592 US __ (March 25, 2021)). Under the Fourth Amendment, a police officer may only use such force as is "objectively reasonable" under the circumstances. No force was reasonable in this case, as Plaintiff had committed no crime, posed no threat of any kind to anyone, and was not evading, resisting, or fleeing from arrest.

52.    Plaintiff has the right under the Fourth Amendment to be free from improper seizure and excessive force; to be free from the imposition of summary punishment without due process of law; and to be free from the imposition of cruel and unusual punishment.

53.    At all relevant times, Defendants acted under color of state law, and their conduct violated Plaintiff's clearly established rights to the Fourth Amendment of the United States Constitution to be free from unreasonable, excessive and arbitrary force

and seizures under color of law. Moreover, the arbitrary and indiscriminate use of force against Plaintiff – and other peaceful protestors – in targeting and shooting her with a rifle during the course of her lawful protest, was excessive and objectively unreasonable, in direct violation of the Fourth Amendment.

54.     There was no justification for the Defendants' use of force on Plaintiff. Defendants engaged in the indiscriminate use of weapons – without any audible prior notice or warning – against peaceful demonstrators such as Ms. Segura, who did not present a physical threat to police officers or any member of the public. Likewise, the Defendants were not facing a situation involving split second decisions as they were present on the mezzanine above the scene observing for a substantial period of time prior to deploying rubber bullets and other methods of physical force.

55.     Ms. Segura was "seized" by Defendants when Defendants' officers intentionally, through the use of force, terminated her freedom of movement by shooting her in the face with a bullet or projectile. Defendants' attacks were done not to compel Plaintiff to retreat or to arrest or detain her, but to injure and punish her and teach her a lesson for attending a peaceful and legal protest, whilst she was leaving the area as a result of their implicit or explicit request that she do so. With respect to Defendant Officer DOE 1 who shot her, he engaged in his conduct intentionally, knowingly, willfully, wantonly, maliciously and in reckless disregard of Plaintiff's constitutional rights, and is therefore liable to Plaintiff for punitive damages.

56.   As a direct and proximate result of Defendants' unlawful actions, Ms. Segura has sustained injuries and damages including, physical injury, mental anguish and emotional distress, humiliation and embarrassment and has incurred attorney's fees. Ms. Segura also fears future retaliation in violation of the Fourth Amendment if she continues to observe, record, or participate in constitutionally protected activity.

**THIRD CLAIM FOR RELIEF**
**Civil Rights - 42 U.S.C. §1983 - Failure to Train, Supervise**
**& Discipline (*Monell*)**
**(Against Defendant CITY OF LA MESA)**

57.   Plaintiff incorporates here the allegations contained in ¶¶1 – 56 above.

58.   The City of La Mesa is liable for the deprivation of Plaintiff's constitutional rights pursuant to the Supreme Court's holding in *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), which provides that  a local governing body may be held liable for violations of the constitutional rights committed by the entity's employees if the violations arose from, among other things: (a) an official policy or settled practice/custom among the entity's employees; and/or (b) deliberate indifference to training and supervision policies that are inadequate to prevent violations of law by the entity's employees.

59.   At all times herein, the City of La Mesa, through its Police Department, supervisors and/or policymakers, established and/or maintained the following customs, usages, policies and/or practices:

a. Using less-lethal force (including projectile, chemical and impact devices) against demonstrators without warning or justification;

b. Using less-lethal force (such as shooting rubber bullets) at fleeing demonstrators without warning or justification;

c. Using potentially-deadly force for crowd control purposes, regardless of whether a protestor's actions justify such use of force;

d. Failing to properly train, supervise, condemn and discipline La Mesa officers regarding appropriate use of force;

e. Failed to ensure that officers' actions were documented or recorded as required via proper use of body-worn cameras and self-documentation procedures; and

f. Inadequately preparing its officers to monitor or facilitate peaceful protests, and implicitly and explicitly allowing and encouraging its officers to respond improperly and inappropriately.

60. Defendant knew or should have known of the dangerous propensities of its officers and its own lack of policies and their use, but took no steps to train and/or retrain the officers, correct their abuses of authority, monitor and guide their activities on duty, ensure their proper use of policies, or discourage their unlawful use of authority. In particular, Defendant, acting through its police department, supervisors and/or policymakers, was on actual notice that its officers, including DOES 1-25, engaged in

the above-listed practices, but took no actions against these officers thereby condoning and/or acquiescing in their unconstitutional uses of force, arrests, detentions, and invasion of Plaintiff's First, Fourth, and Fourteenth Amendment rights.

61.    Each of the aforementioned policies, customs and/or practices was known to the City of La Mesa as being highly likely and probable to cause violations of the constitutional rights of members of the public, including but not limited to Ms. Segura.

62.    The conduct of the Doe Defendants herein was committed pursuant to the customs, policies and/or practices of the City of La Mesa. Each such custom, policy and/or practice, referenced above, was a moving force in the violations of Plaintiff's constitutional rights, as set forth herein.

63.    The policymakers of the City of La Mesa have acted with utter disregard and deliberate indifference for the constitutional rights of Plaintiff, the protestors and would-be protesters by authorizing both explicitly and implicitly, the use of less-lethal force against protestors who do not pose any safety threat; by failing to properly train, supervise, condemn, and discipline La Mesa police officers regarding appropriate use of force against protesters; and by failing to rectify the police department's unconstitutional custom of using less-lethal force to control and suppress demonstrations.

64.    As a direct and proximate result of Defendants' unlawful actions, Plaintiff sustained injuries and damages including physical injury, mental anguish and emotional distress, humiliation and embarrassment, and has incurred attorney's fees.

## FOURTH CLAIM FOR RELIEF
### Bane Civil Rights Act (Civil Code §52.1)
### (Against All Defendants)

65.     Plaintiff incorporates here the allegations contained in ¶¶1 – 64 above.

66.     The acts alleged above, particularly the act of unjustified and excessive physical force (shooting Plaintiff in the face with a gun after teargassing the group of peaceful protestors of which she was a part) constituted excessive force and therefore an unreasonable seizure, in violation of Plaintiff's rights guaranteed by the California Constitution (Article I, §13) and the United States Constitution, specifically the Fourth Amendment thereto, as well as negligence, assault and battery under California law. This act was committed by threats, intimidation, and/or coercion by DOE 1, with the intent to violate Plaintiff's constitutional and statutory rights, and/or with a reckless disregard for those rights. Therefore, Plaintiff is entitled to damages pursuant to Civil Code §52.1.

67.     As a result of these acts, Plaintiff suffered the injuries and damages described herein, along with severe pain, suffering and emotional distress, entitling her to damages in an amount proven at trial.

68.     In committing the acts alleged above, Defendant DOE 1 acted maliciously and/or oppressively and was guilty of a wanton and reckless disregard for the rights, feelings and safety of Plaintiff and by reason thereof Plaintiff is entitled to exemplary and punitive damages in an amount to be proven at trial.

### FIFTH CLAIM FOR RELIEF
**Assault / Battery by Peace Officers**
**(Against Defendant CITY OF LA MESA and DOE 1)**

69.   Plaintiff incorporates here the allegations contained in ¶¶1 – 68 above.

70.   Defendants' actions – namely, intentionally shooting Plaintiff with a gun after teargassing her -- constitute the use of improper and excessive force and violence, and thus also constitute a battery upon Plaintiff.

71.   Defendants used unreasonable, unnecessary, and disproportionate force when interacting with Plaintiff – they used a rifle to shoot her in the face with a bullet or other projectile as she backed away from the scene while exiting the area, (which Defendants subsequently claimed (albeit falsely) they had instructed her to do).

72.   As a direct and legal result of Defendants' actions, Plaintiff suffered the injuries described above, entitling her to damages in an amount to be proven at trial.

73.   Defendant City of La Mesa is vicariously liable under California Government Code §815.2(a) for the acts and omissions of its Police Officers, including DOE 1, and employees during the course and scope of their employment.

74.   Defendant DOE 1's actions were intentional, unreasonable, outrageous, malicious and unprivileged, and justify an award of exemplary and punitive damages.

### SIXTH CLAIM FOR RELIEF
### Negligence
### (Against All Defendants)

75.     Plaintiff incorporates here the allegations contained in ¶¶1 – 75 above.

76.     Defendants owed a duty of care to Plaintiff to act reasonably and abide by the law, and a duty to use reasonable care with respect to hiring, supervision, and training of its police officers, including Officer DOE 1, in order to avoid foreseeable injury to her. Defendants also had a duty to Plaintiff to act with ordinary care and prudence so as not to cause her harm or injury, a duty to act reasonably in order to prevent escalation of routine encounters, and a duty to not shoot her in the face for no reason.

77.     Defendants breached these duties by failing to use ordinary care and skill as La Mesa Police Officers, and instead used, and/or caused to be used, violence and force against her. In addition, the City of La Mesa breached its duty to use reasonable care in the hiring, supervision, training, and/or discipline of its LMPD Officers and other employees, and breached its duty to create, use and ensure that proper policies are followed, causing the damages and injuries sustained by Plaintiff.

78.     As a direct and proximate cause of Defendants' actions, Ms. Segura has been damaged in an amount according to proof at the time of trial.

79.     City of La Mesa is vicariously liable under Gov. Code §815.2(a) for acts and omissions of its Officers and employees during the course of their employment.

### SEVENTH CLAIM FOR RELIEF
### Intentional Infliction of Emotional Distress
### (Against All Defendants)

80.     Plaintiff incorporates here the allegations contained in ¶¶1 - 79 above.

81.     Defendants used unreasonable, unnecessary, and disproportionate force when interacting with Plaintiff. Plaintiff was not breaking any rules or committing any crimes, nor did she pose any imminent or other threat to anyone's safety.

82.     This conduct illustrates Defendants' intent to cause Plaintiff physical and emotional harm. This type of behavior must not be accepted in a civilized society, and would be deemed extreme and outrageous conduct by any reasonable person. Plaintiff continues to suffer anxiety, fear and depression as a result of Defendants' conduct.

83.     Defendants' actions constitute extreme and outrageous conduct, were intentional and malicious, and were designed to cause, and did indeed cause, Plaintiff severe and extreme mental, emotional and physical distress, injury, and fear. Defendants acted with reckless disregard of the probability that Plaintiff would suffer this distress.

84.     Defendants' actions were intentional, outrageous, unprivileged, and justify an award of exemplary and punitive damages.

85.     The CITY is vicariously liable under Gov. Code §815.2(a) for the acts and omissions of its Officers and employees during the course and scope of employment.

**EIGHTH CLAIM FOR RELIEF**
**Violations of the California Constitution**
**(Article I, §2; Article I, §3; Article I, §7)**
**(Against All Defendants)**

86.    Plaintiff incorporates here the allegations contained in ¶¶1 - 85 above.

87.    Defendants' decision to forcibly disperse Ms. Segura by using teargas and a gun caused her harm and violates her rights under Article I, §2 of the California Constitution. In California "[e]very person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press." The California Supreme Court has recognized that the California Constitution is "more protective, definitive and inclusive of the rights to expression and speech than the First Amendment to the United States Constitution." *Rosenbaum v. City & County of S.F.*, 484 F.3d 1142, 1167 (9th Cir. 2007).

88.    In California "[t]he people have the right to … assemble freely to consult for the common good." Cal. Const. Art I, §3, and "[a] person may not be deprived of life, liberty or property without due process of law." Cal. Const. Art I, §7.

89.    Plaintiff has no adequate remedy at law and will suffer serious and irreparable harm to her constitutional rights unless Defendants are enjoined from deploying teargas against, and randomly shooting guns at, peaceful protestors, and from doing so against anyone without creating and following proper protocols for such, including proper use of body-worn cameras to document such.

90.     Plaintiff seeks only declaratory and injunctive relieve, not damages, for the violations of her rights under Article I, §2; §3; and §7 of the California Constitution.

## **JURY TRIAL DEMAND**

Plaintiff requests a jury trial on all issues so triable.

## **PRAYER FOR RELIEF**

Accordingly, Plaintiff asks for judgment against Defendants as follows:

1.     An injunction barring Defendants from engaging in the unconstitutional conduct of randomly deploying and shooting deadly projectiles at peaceful protestors;

2.     An injunction requiring the City of La Mesa, LMPD, and their officers and employees to create, implement, and use state-of-the-art training policies, protocols and procedures to properly deal with public protests, including the proper use, and non-use, of guns, teargas, and other weapons therein, and requiring them to make said policies and procedures public;

3.     An injunction requiring the City of La Mesa, LMPD, and their officers and employees to properly document and record their interactions with, and their use of guns, teargas and other weapons at, public protestors and protests, and to create and use proper polices to ensure such documentation;

4.     An injunction imposing other appropriate remedial measures to prevent the repetition of such conduct by the City of La Mesa and LMPD;

5.     A declaratory judgment that Defendants' conduct complained-of herein was a violation of Ms. Segura's rights under the Constitution and Laws of the United States;

6.     A declaratory judgment that Defendants' conduct complained-of herein was a violation of Ms. Segura's rights under the California Constitution;

7.     General, special, compensatory and punitive damages in an amount according to proof;

8.     Reasonable attorneys' fees;

9.     Costs of suit;

10.     Pre-judgment interest;

11.     Such other and further relief as this Court deems just and proper.

**DREHER LAW FIRM**

Dated: March 31, 2021        By: _____

Robert Scott Dreher

- *and* -

**MILLER LAW FIRM**
Matthew R. Miller
Carlos Americano

*Attorneys for Plaintiff*