UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

ZEELEE SEGURA,

Plaintiff,

v.

CITY OF LA MESA, et al.,

Defendants.

Case No.:  21cv565 JM (MDD)

**ORDER ON MOTION TO DISMISS**

Presently before the court is Defendant County of San Diego's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6).  (Doc. No. 44).  Pursuant to Local Rule 7.1(d)(1), the court finds the matters presented appropriate for resolution without oral argument.  Having considered the Parties' arguments, the evidence, and the law, the court rules as follows.

## BACKGROUND

### I.    Factual Background

The instant case arises from the alleged use of force by law enforcement officers on May 30, 2020 against Plaintiff, a participant in a racial injustice demonstration in La Mesa, California.  It is one of a number of cases filed in this District relating to the La Mesa demonstration.  *See Astorga v. County of San Diego et al.*, No. 3:21-cv-00463-

1

BEN-KSC; *Horton v. County of San Diego et al.*, 3:21-cv-00400-H-BGS; *Woolsey v. County of San Diego et al.*, 21cv877-BEN-AHG; *LaBarge v. City of La Mesa et al*, 3:21-cv-1035-RBM-BGS.

Plaintiff makes the following allegations in her Third Amended Complaint ("TAC"), which the court assumes to be true for purposes of considering Defendant's Motion to Dismiss. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

On May 30, 2020, Plaintiff and a friend joined other protestors at a "Black Lives Matter" demonstration in La Mesa, California. TAC at ¶¶ 16–17. The protestors were assembled partly at the entrance of the La Mesa Police Department ("LMPD") headquarters. *Id.* at ¶¶ 17–19. The entrance of LMPD headquarters was blocked by a "line of uniformed LMPD Officers and San Diego County Sheriff's Department [("SDSD")] deputies," who were later replaced by a "tight phalanx of officers" in "full riot gear." *Id.* at ¶¶ 18, 20. A second group of officers, including Defendants Detective Daniel Garcia, Officer Jack Gaughran, and Sergeant Michael Pierce, were on the second-floor mezzanine "with rifles, scopes, helmets, and gas masks." *Id.* at ¶ 21.

In the early evening, law enforcement personnel deployed teargas into the area. *Id.* at ¶¶ 22–25. In response, Plaintiff joined other protestors in moving away from LMPD headquarters. *Id.* at ¶ 26. When Plaintiff arrived to within a few yards of the far corner of the La Mesa Post Office, which is described in the TAC as being "more than 40 yards" from the entrance of LMPD headquarters and "nowhere near anyone who was engaging with the LMPD," she paused and turned to locate her friend. *Id.* at ¶ 30. As she turned, Plaintiff claims she saw a "flash" from the second-floor mezzanine and a projectile "slammed" into her face causing her to be "knocked to a knee on the ground." *Id.* at ¶ 31. According to the TAC, Plaintiff was struck with a "less than lethal" projectile known as a Kinetic Impact Projectile ("KIP"). *Id.* at ¶¶ 33–34. Plaintiff claims the impact of the KIP caused her head pain and her lip to swell. *Id.*

///

## II. Procedural Background

On March 31, 2021, Plaintiff filed the instant action against Defendants City of La Mesa, the LMPD, and unknown DOE personnel of the City of La Mesa and LMPD. (Doc. No. 1).

On October 12, 2021, the court granted the Parties' Joint Motion to allow Plaintiff to amend her complaint to add Defendant County of San Diego ("County") and certain members of the County's personnel.  (Doc. Nos. 15; 16; 18).  On May 26, 2022, the court granted the Parties' Joint Motion to allow Plaintiff to amend her complaint a second time to remove certain state law claims for relief.  (Doc. Nos. 30; 31; 33).

On July 7, 2022, the County filed a Motion to Dismiss and Strike Plaintiff's Second Amended Complaint.  (Doc. No. 36).  On September 12, 2022, the court granted the Parties' Joint Motion to allow Plaintiff to file a TAC to amend certain allegations against the County in an effort for the Parties reach an agreement on the state of Plaintiff's pleadings without the court's intervention. (Doc. Nos. 41; 42; 43).

Plaintiff's TAC, filed on September 7, 2022,[1] asserts eight causes of action, primarily under 42 U.S.C. § 1983 and California state law, against Defendants City of La Mesa, LMPD, the County, Detective Daniel Garcia, Officer Jack Gaughran, Sergeant Michael Pierce, and unknown DOE officers employed by the City of La Mesa, LMPD, and SDSD.  (Doc. No. 42).  Specifically, Plaintiff asserts federal civil rights causes of action (42 U.S.C. § 1983) for: violation of her First Amendment right to speech and "to seek redress of government grievances" (Count I); violation of her Fourth Amendment right to be free from excessive force (Count II); and various *Monell* claims  (Count III). Plaintiff also asserts state law claims for violation of California's Bane Act, Civil Code § 52.1 (Count IV); assault/battery (Count V); negligence (Count VI); intentional infliction of emotional distress (Count VII); and violations of Article I, § 2, Article I, § 3, and Article I, § 7 of the California Constitution (Count VIII).  *Id.* at ¶¶ 39–101.

---

[1] Plaintiff's TAC was filed prior to the court granting leave.  (Doc. Nos. 42; 43).

On September 28, 2022, the County filed the instant Motion to Dismiss Plaintiff's TAC.  (Doc. No. 44).  Plaintiff filed a Response (Doc. No. 46) and Defendant filed a Reply (Doc. No. 47).  The Motion is now fully briefed and ripe for resolution.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6).  A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim."  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party."  *Manzarek*, 519 F.3d at 1031.

On the other hand, the court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).  Nor is the court "required to accept as true allegations that contradict exhibits attached to the [c]omplaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."  *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted).

Pleading facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief.  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  This plausibility review is a "context-specific task that requires the reviewing court

4

to draw on its judicial experience and common sense." *Id.* at 679.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* (quotation marks omitted).

Where a complaint does not survive 12(b)(6) analysis, the court will grant leave to amend unless it determines that no modified contentions "'consistent with the challenged pleading . . . [will] cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

## ANALYSIS

## I.   *Monell* Liability under 28 U.S.C. § 1983 (Third Cause of Action)[2]

The County moves to dismiss Plaintiff's claim for municipal liability against the County alone.  (*See* Doc. No. 44-1 at 11–19).

### A.   *Legal Standard*

Section 1983 authorizes civil actions for the "deprivation of any rights . . . secured by the Constitution and laws" against a party acting under color of state law.   42 U.S.C. § 1983.  Municipal entities, such as the County, "cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Instead, municipalities "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* at 690.

"The Supreme Court has made clear that policies can include written policies, unwritten customs and practices, failure to train municipal employees on avoiding certain obvious constitutional violations, and, in rare instances, single constitutional violations

---

[2] The Court analyzes the County's arguments in the order presented in the County's Motion.  *See* Doc. No. 44-1.

are so inconsistent with constitutional rights that even such a single instance indicates at least deliberate indifference of the municipality[.]"  *Benavidez v. Cty. of San Diego*, 993 F.3d 1134, 1153 (9th Cir. 2021) (citing *City of Canton v. Harris*, 489 U.S. 378, 387 (1989) and *Board of the County Comm'rs v. Brown*, 520 U.S. 397, 405–406 (1997)).

In the motion to dismiss context, the Ninth Circuit has made clear claims of *Monell* liability must comply with the basic principles set forth in *Twombly* and *Iqbal*.  *AE v. Cty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012); *see e.g., Alter v. Cty. of San Diego*, No. 21-cv-01709-LL-KSC, 2022 U.S. Dist. LEXIS 190486, at *10 (S.D. Cal. Oct. 18, 2022); *Soares v. Cty. of San Diego*, No. 3:21-cv-01738-BEN-RBB, 2022 U.S. Dist. LEXIS 74299, at *8–9 (S.D. Cal. Apr. 22, 2022).  First, a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."  *AE*, 666 F.3d at 637.  Second, "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation."  *Id.*

### B.    *Deprivation of a Constitutional Right*

The threshold question as to whether Plaintiff can establish *Monell* liability is whether a constitutional violation has occurred.  *See Lockett v. Cty. of L.A.*, 977 F.3d 737, 741 (9th Cir. 2020) (*Monell* claims are "contingent on a violation of constitutional rights.") (internal quotation marks omitted).

Here, Plaintiff alleges *Monell* liability against the County for alleged violations of her First, Fourth and Fourteenth Amendment rights.  TAC at ¶¶ 39–65, 67, 69.  The County does not dispute, at least for purposes of its Motion to Dismiss, that the actions of a DOE SDSD Deputy could have constituted a violation of Plaintiff's constitutional rights.  (Doc. No. 44-1 at 12 ("[E]ven assuming the underlying conduct by an unknown DOE Deputy was a violation of Plaintiff's constitutionally protected rights . . . .").  The court, therefore, also assumes, without deciding, that the actions of a DOE SDSD Deputy could have violated Plaintiff's constitutional rights.  *See Fox Broad. Co. v. Dish Network*

*LLC,* 160 F. Supp. 3d 1139, 1180 n.21 (C.D. Cal. 2015) (declining to *sua sponte* decide an issue not specifically briefed); *Ortiz v. Pacific*, 973 F. Supp. 2d 1162, 1185 (E.D. Cal. 2013) ("It is not the Court's role to make arguments for any party."). The court makes this assumption for the purpose of considering the County's instant Motion only.[3]

### C.   *Legal Framework of Plaintiff's Monell Claims*

The court next examines the legal framework of Plaintiff's *Monell* claims. Under Ninth Circuit precedent, a plaintiff may recover under *Monell* based on one of three theories. *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1249–50 (9th Cir. 2010), *overruled on other grounds by Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016). First, "a local government may be held liable 'when implementation of its official policies or established customs inflicts the constitutional injury.'" *Id*. at 1249 (quoting *Monell*, 436 U.S. at 708). Second, "under certain circumstances, a local government may be held liable under § 1983 for acts of omission, when such omissions amount to the local government's own official policy." *Id.* (internal quotation marks omitted). Third, "a local government may be held liable under § 1983 when the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it." *Id.* at 1250 (internal quotation marks omitted).

Here, while the contours of Plaintiff's *Monell* claim are not entirely clear, Plaintiff appears to be claiming *Monell* liability against the County under all three theories. First, Plaintiff alleges the County had a "de facto" custom or practice of permitting various degrees of non-lethal force to be utilized for crowd control, regardless of whether any

---

[3] The County does argue that a *Monell* claim based on the actions of a LMPD officer would not be viable against the County. (Doc. No. 44-1 at 18–19). As Plaintiff points out, however, this is a non-issue. (Doc. No. 46 at 12). Plaintiff alleges it was either a LMPD officer *or* a SDSD Deputy who fired the non-lethal projectile that struck her. TAC at ¶ 9 ("[T]he LMPD claims that a SDSD Deputy may have been the one who shot Plaintiff in the face."). The court observes that the County did not address Plaintiff's response to this point in the County's Reply. (*See* Doc. No. 47).

7

individual's actions justified the use of such force.  TAC at ¶¶ 50, 69, 72.    Second, Plaintiff alleges the County failed to properly train and supervise its employees on the constitutional limitations of using non-lethal force.  *Id.* at ¶ 71.  Third, Plaintiff alleges the County ratified the use of such non-lethal force for crowd control.  *Id.* at ¶ 69.  The court addresses each of Plaintiff's three theories in turn below.

### 1.    Unconstitutional Policy, Custom or Practice

The court first addresses Plaintiff's allegation the County had a "de facto" policy of allowing its officers to use non-lethal force for "crowd control" purposes, regardless of whether any individual's actions justified the use of such force.  TAC at ¶¶ 50, 69, 72.

In this case, Plaintiff does not point to any explicit official policy promulgated by the County allowing for non-lethal force to be used indiscriminately for crowd control purposes.  *See* TAC.  Indeed, Plaintiff appears to concede the County's formal policies condone such practices.  *Id.* at ¶ 36 ("Despite proffering purported 'policies' against such behaviors . . . .").    Nevertheless, Plaintiff contends the County "appears" to have unofficial "policies or practices" that "deliberately or negligently" allow for "the willful escalation of minor situations into confrontational disasters without regard to the rights of citizens acting lawfully."  *Id.*

"Absent a formal governmental policy, [a plaintiff] must show a 'longstanding practice or custom which constitutes the standard operating procedure of the local government entity.'"  *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (quoting *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992)).  "The custom must be so 'persistent and widespread' that it constitutes a 'permanent and well settled city policy.'"  *Id.* (quoting *Monell,* 436 U.S. at 691).

The crux of the Parties dispute, here, is whether Plaintiff's allegation of a single incident of unconstitutional conduct is sufficient to impose *Monell* liability on the County based on an unofficial practice or custom.    The County contends Plaintiff's single incident allegations are insufficient to establish *Monell* liability.  (Doc. No. 44-1 at 12–

14).  Plaintiff counters "single incident" liability is viable under *Monell*.  (Doc. No. 46 at 7–10).

In general, "a single instance of unlawful conduct is insufficient to state a claim for municipal liability under section 1983." *Benavidez*, 993 F.3d at 1154 (9th Cir. 2021).  Plaintiff is correct, however, that isolated incidents may trigger *Monell* liability in certain, limited circumstances.  As the Ninth Circuit has held, "[s]ingle acts may trigger municipal liability where 'fault and causation' were clearly traceable to a municipality's legislative body or some other authorized decisionmaker[.]" *Id.* (quoting *Bd. of the Cty. Comm'rs v. Brown*, 520 U.S. 397, 406 (1997)).

Even so, "an isolated or sporadic incident [] cannot form the basis of *Monell* liability for an improper custom." *Saved Magazine v. Spokane Police Dep't*, 19 F.4th 1193, 1201 (9th Cir. 2021) (internal quotation omitted); *see also Trevino*, 99 F.3d at 918 ("Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out that policy."); *Thompson v. City of L.A.*, 885 F.2d 1439, 1443–44 (9th Cir. 1989) ("Consistent with the commonly understood meaning of custom, proof of random acts or isolated events are insufficient to establish custom.") *overruled on other grounds by Bull v. City & Cty. of S.F.*, 595 F.3d 964 (9th Cir. 2010) (en banc).

In other words, Plaintiff "cannot prove the existence of a municipal policy or custom based solely on the occurrence of a single incident of unconstitutional action by a non-policymaking employee." *Davis v. City of Ellensburg*, 869 F.2d 1230, 1233 (9th Cir. 1989); *see also Duenas v. Cty. of Riverside*, No. EDCV 21-1645 (SPx), 2022 U.S. Dist. LEXIS 103666, at *10 (C.D. Cal. Apr. 7, 2022) ("Allegations of a single occurrence of an alleged constitutional violation do[] not equate to a policy or custom."); *Naranjo v. City of Redwood City*, No. 19-cv-01549-YGR, 2019 U.S. Dist. LEXIS 138528, at *19 n.14 (N.D. Cal. Aug. 15, 2019) ("With respect to customs and practices, liability may not be premised on an isolated incident.").

Absent the allegations of her own isolated experience, Plaintiff alleges —at most— that the County "appears" to have an unconstitutional custom or practice. TAC at ¶ 36. This is just a bare legal conclusion, however, and is insufficient to establish a plausible claim for *Monell* liability based on an unofficial custom or practice. As the Ninth Circuit has cautioned "[w]hen one must resort to inference, conjecture and speculation to explain events, the challenged practice is not of sufficient duration, frequency and consistency to constitute an actionable policy or custom." *Trevino*, 99 F.3d at 920.

Put more simply, Plaintiff must do more than allege in a conclusory fashion that the County maintains an unwritten policy or custom of permitting the types of wrongs Plaintiff experienced. *See Tulare*, 666 F.3d at 637–38; *Brown v. Cty. of San Bernardino*, No. EDCV 20-1304 JGB (SHKx), 2021 U.S. Dist. LEXIS 7043, at *11 (C.D. Cal. Jan. 8, 2021) ("Courts have repeatedly rejected sweeping allegations of policies and customs in the absence of facts supporting their existence and applicability.") (collecting cases); *A.B. v. City of Santa Ana*, No. SA CV 18-1553-DOC (ADS), 2019 U.S. Dist. LEXIS 65691, at *11 (C.D. Cal. Feb. 11, 2019) ("Plaintiffs 'bare assertion' that Defendants have an ongoing unlawful policy or practice, without more, does not suffice to state a claim for relief."); *Warner v. Cty. of San Diego*, No. 10cv1057 BTM(BLM), 2011 U.S. Dist. LEXIS 14312, at *10 (S.D. Cal. Feb. 14, 2011) (dismissing *Monell* claim that consisted of mere "formulaic recitations of the existence of unlawful policies, customs, or habits.").

For these reasons, the court concludes Plaintiff has failed to adequately allege *Monell* liability against the County based on an unwritten practice or custom.

### 2.  Failure to Train

The Court next addresses Plaintiff's allegation the County failed to adequately train its law enforcement officers in deliberate indifference to Plaintiff's constitutional rights. TAC at ¶¶ 37, 71.[4]

---

[4] Plaintiff also alleges a failure to supervise or discipline. TAC at ¶¶ 37, 71. The same standards that apply to Plaintiff's failure to train claim apply to Plaintiff's failure to

"Failure to train may constitute a basis for *Monell* liability where the failure amounts to deliberate indifference to the rights of those who deal with municipal employees." *Benavidez*, 993 F.3d at 1153. "To allege a failure to train, a plaintiff must include sufficient facts to support a reasonable inference (1) of a constitutional violation; (2) of a municipal training policy that amounts to a deliberate indifference to constitutional rights; and (3) that the constitutional injury would not have resulted if the municipality properly trained their employees." *Id.* at 1153–54 (citing *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007)).

Here, again, the crux of the Parties' dispute is whether a single incident is sufficient to plausibly establish *Monell* liability under a failure to train theory. Again, the County contends a single, isolated incident is insufficient while Plaintiff counters "single incident" liability is viable under a failure to train theory. (Doc. Nos. 44-1 at 15–17; 46 at 7–10; 47 at 4–7).

"A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 61. Nevertheless, in *City of Canton*, the Supreme Court left open "the possibility that a plaintiff might succeed in carrying a failure-to-train claim without showing a pattern of constitutional violations." *Bd. of the Cty. Comm'rs v. Brown*, 520 U.S. 397, 409 (1997).

Specifically, in *City of Canton*, the Supreme Court "hypothesized" that:

> [I]n a narrow range of circumstances, a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations. The likelihood that the situation will recur

supervise or discipline claims. For these reasons, the court analyzes these claims together. *See e.g.*, *Hanline v. Cty. of Ventura*, No. CV 15-8808-VAP (AJWx), 2017 U.S. Dist. LEXIS 237327, at *41 (C.D. Cal. Aug. 7, 2017) ("The same standards that apply to failure to train claims apply to failure to supervise claims.").

11

> and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights could justify a finding that policymakers' decision not to train the officer reflected "deliberate indifference" to the obvious consequence of the policymakers' choice—namely, a violation of a specific constitutional or statutory right.

*Id*.

The scope of *Canton*'s single incident exception, however, is limited.  As the Ninth Circuit recently elaborated in *Hyde v. City of Willcox*, 23 F.4th 863 (9th Cir. 2022):

> While deliberate indifference can be inferred from a single incident when the unconstitutional consequences of failing to train are patently obvious, an inadequate training policy itself cannot be inferred from a single incident.  Otherwise, a plaintiff could effectively shoehorn any single incident with no other facts into a failure-to-train claim against the supervisors and the municipality.

*Id.* at 874–75; *see also Canton*, 489 U.S. at 391 ("[P]lainly, adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable."); *Benavidez*, 993 F.3d at 1154 ("As with single violations of a written policy, 'that a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program.'") (quoting *Canton*, 489 U.S. at 390–391)).

In her TAC, Plaintiff alleges it was "apparent" law enforcement officers operating in La Mesa "lacked the necessary training and supervision needed to protect constitutional guarantees" and the County was "deliberately indifferent" to this lack of training and supervision.  TAC at ¶ 71.  Plaintiff's TAC contains no allegations of similar constitutional violations that have occurred in the past or any other facts pertaining to the training of SDSD personnel beyond such conclusory allegations.

Given the lack of any additional factual allegations, Plaintiff is, in essence, requesting that the court do what the Ninth Circuit has rejected—to infer from a single

incident of alleged unconstitutional incident "*both* that the training was defective *and* that [the County was] deliberately indifferent to its unconstitutional consequences." *Hyde*, 23 F.4th at 874.   Following the Ninth Circuit, this court also rejects "this attempt to circumvent the pleading requirement for a failure-to-train claim." *Id.*; *see also Blankenhorn*, 485 F.3d 463 ("[E]vidence of the failure to train a single officer is insufficient to establish a municipality's deliberate policy."); *Feldman v. Sutton*, No. 22-cv-341-MMA (AGS), 2022 U.S. Dist. LEXIS 135702, at *21 (S.D. Cal. July 29, 2022) ("Plaintiff cannot rely on *Canton* to avoid pleading a pattern of similar constitutional violations[.]"); *Ortiz v. Cty. of Trinity*, No. 2:21-cv-02248-JAM-AC, 2022 U.S. Dist. LEXIS 100618, at *8–9 (E.D. Cal. June 3, 2022) (court cannot infer that a county failed to train officers on civil standbys from a single incident); *Hendrix v. City of San Diego*, No. 20-CV-45 TWR (NLS), 2021 U.S. Dist. LEXIS 168430, at *26 (S.D. Cal. Aug. 11, 2021) (dismissing *Monell* claim based on inadequate training where plaintiff did not "provide other instances of similar constitutional violations caused by untrained employees."); *Branch v. Cty. of San Diego*, No. 15-cv-2336 AJB KSC, 2018 U.S. Dist. LEXIS 69835, at *8 (S.D. Cal. Apr. 24, 2018) ("[T]he Court cannot extrapolate an alleged failure to train one employee, involving a single incident, into a systemic problem resulting from a policy or custom of inadequate supervision and training."); *Estate of Adomako v. City of Fremont*, No. 17-cv-06386-DMR, 2018 U.S. Dist. LEXIS 15018, at *19 (N.D. Cal. Jan. 29, 2018) (dismissing complaint that only alleged facts specific to an isolated incident and contained "no factual allegations demonstrating a practice or custom beyond that incident.").

While Plaintiff did identify at least one other La Mesa protestor allegedly injured as a result of the use of non-lethal projectiles by law enforcement personnel, TAC at ¶ 34, the relevance of other protestors being injured in the same fashion as Plaintiff, at the same protest, is unclear.   Plaintiff consistently argues in her briefing that a single incident, by itself, is sufficient to establish *Monell* liability.   *See* Doc. No. 46 at 7–11 (arguing that "the law supports 'single incident' liability under *Monell*).

To the extent that Plaintiff is instead arguing the La Mesa protest was a single event comprising *multiple incidents*—Plaintiff's analysis must be clearly set forth in her briefing and not subject to the court—or the County's—speculation. *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("[J]udges are not like pigs, hunting for truffles buried in briefs.") (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)); *Blankenship v. Cox*, No. 3:05-CV-00357-RAM, 2007 U.S. Dist. LEXIS 19425, at *40 (D. Nev. Mar. 19, 2007) ("It is not the court's duty to do [Plaintiff's] legal research.").

Plaintiff has not argued, or identified, any legal authority, holding that alleged constitutional violations occurring as part of the same protest may be considered separate incidents. Although the court declines to decide this unbriefed and unargued issue, there is at least Supreme Court authority suggesting that "contemporaneous or subsequent conduct cannot establish a pattern of violations that would provide notice . . . and the opportunity to conform to constitutional dictates." *Connick*, 563 U.S. at 63 n.7 (internal quotation marks omitted).

For these reasons, the court concludes Plaintiff has failed to adequately allege *Monell* liability against the County based on a failure to train theory.

### 3. Ratification

The court finally addresses Plaintiff's allegation County policymakers ratified the use of non-lethal force against Plaintiff. TAC at ¶ 67.

"A municipality may be held liable for a constitutional violation if a final policymaker ratifies a subordinate's actions." *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004). To show ratification, plaintiff must show that "an official with final policy-making authority 'delegated that authority to, or ratified the decision of, a subordinate.'" *Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008) (quoting *Ulrich v. City & County of San Francisco*, 308 F.3d 968, 984–85 (9th Cir. 2002)). "Ratification . . . generally requires more than acquiescence." *Sheehan v. City & Cty. of S.F.*, 743 F.3d 1211, 1231 (9th Cir. 2014). Policymakers must make "'a deliberate choice to endorse' the officers' actions."

1  *Id.* (quoting *Gillette v. Delmore*, 979 F.2d 1342, 1348 (9th Cir. 1992)).  Liability based on

2  a ratification theory may be based on a single incident "causally related to the

3  constitutional deprivation."  *Trevino*, 99 F.3d at 918 n.2.

4      Here, Plaintiff alleges upon information and belief that the County, by its "actions

5  or inactions, authorized and/or ratified" the use of non-lethal force at the La Mesa

6  demonstration, "including the force used on Plaintiff."  TAC at ¶¶ 47; 67.  This allegation

7  is simply too conclusory to adequately plead ratification.  The court joins numerous other

8  courts in this Circuit that have found similar conclusory allegations to be insufficient to

9  withstand a motion to dismiss.  *See e.g.*, *Thurston v. City of Vallejo*, No. 2:19-CV-1902-

10  KJM-CKD, 2021 U.S. Dist. LEXIS 88128, at *15 (E.D. Cal. May 6, 2021) (dismissing

11  plaintiff's ratification claim that policymakers "ratified" or "knew and/or reasonably

12  should have known" about alleged constitutional violations as conclusory); *Barbosa v.*

13  *Shasta Cty.*, No. 2:20-cv-02298-JAM-DMC, 2021 U.S. Dist. LEXIS 80656, at *10 (E.D.

14  Cal. Apr. 26, 2021) (dismissing plaintiff's complaint which merely stated "in conclusory

15  terms" that authorized policymakers approved of the conduct and decisions of DOE

16  defendants); *French v. City of L.A.*, No. EDCV 20-416 JGB (SPx), 2020 U.S. Dist.

17  LEXIS 198100, at *20 (C.D. Cal. July 9, 2020) (dismissing plaintiff's ratification claim

18  which alleged "a final policymaker knew and specifically approved of" a police officer's

19  acts because this allegation "simply recites the elements of the cause of action and does

20  not contain sufficient allegations of underlying facts.") (internal quotation marks and

21  citation omitted); *Sweiha v. Cty. of Alameda*, No. 19-cv-03098-LB, 2019 U.S. Dist.

22  LEXIS 170552, at *13–14 (N.D. Cal. Oct. 1, 2019) (dismissing ratification claim alleging

23  upon information and belief that defendants "encouraged and./or tacitly authorized the

24  continuing pattern and practice of misconduct" as conclusory); *Petre v. City of San*

25  *Leandro*, No. 15-cv-03344-JSC, 2016 U.S. Dist. LEXIS 237, at *22 (N.D. Cal. Jan. 4,

26  2016) (holding that "conclusory allegations of ratification" are not enough where plaintiff

27  "provides no facts" to support these allegations).

28

21cv565 JM (MDD)

For these reasons, the court concludes Plaintiff has failed to adequately allege *Monell* liability against the County based on a ratification theory.

### D.  *Causation*

Even if Plaintiff had sufficiently pled her theories of municipal liability in this case, her *Monell* claim would still fail because she has not adequately pled causation.

To sufficiently establish a *Monell* claim, Plaintiff must show the municipal action was the moving force behind the alleged constitutional violation.  *Canton*, 489 U.S. at 385 (a plaintiff must establish "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation").  To meet the "moving force" requirement, a plaintiff "must show both causation-in-fact and proximate causation."  *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1096 (9th Cir. 2013).

The Ninth Circuit's decision in *Dougherty v. City of Covina*, 654 F.3d 892 (9th Cir. 2011) is instructive here.  In *Doughtery*, the Ninth Circuit affirmed the dismissal of a *Monell* claim that merely alleged a municipal entity's policies and customs "caused" or were the "moving force" behind the violation of a plaintiff's constitutional rights.  *Id.* at 900.  The Ninth Circuit found such conclusory claims lacked any factual allegations "that would separate them from the formulaic recitation of a cause of action's elements deemed insufficient by *Twombly*."  *Id.* (internal quotation marks and citation omitted).

Similarly, here, Plaintiff contends causation was sufficiently pled because Plaintiff alleged that as a "direct result" of the County's "policies, inactions, and actions, she was injured."  (Doc. No. 46 at 12 (citing TAC at ¶ 31)).  This mirrors the "formulaic recitation" of causation found to be insufficient in *Doughtery.  See also e.g., Trujillo-Lopez v. City of Vallejo*, No. 4:20-cv-02139-JSW, 2022 U.S. Dist. LEXIS 203467, at *15 (N.D. Cal. Nov. 8, 2022) (finding allegation an entity's policies were "a direct and proximate cause" of the constitutional violation to be insufficient under *Doughtery*); *Bagley v. City of Sunnyvale*, No. 16-CV-02250-LHK, 2017 U.S. Dist. LEXIS 9948, at *41–42 (N.D. Cal. Jan. 24, 2017) (finding allegation an entity's "customs, policies,

practices and procedures" were the "moving force and/or proximate cause" of deprivations of a plaintiff's constitutional rights to be insufficient under *Doughtery*).

For the above reasons, the court **GRANTS** the County's Motion to Dismiss Plaintiff's Third Cause of Action against the County alone. As the court is not convinced a plausible *Monell* claim against the County cannot be pled, however, the court grants the County's Motion with **LEAVE TO AMEND.**

## II.   Violation of the First Amendment to the United States Constitution (First Cause of Action)

The County secondly moves to dismiss Plaintiff's First Cause of Action against the County as duplicative of Plaintiff's *Monell* claim. (Doc. No. 44-1 at 19–20).

Courts may dismiss claims that essentially repeat another claim in the same complaint. *See Hall v. Fiat Chrysler Am. US LLC*, No. SACV 21-00762-CJC (DFMx), 2022 U.S. Dist. LEXIS 198298, at *8 (C.D. Cal. Oct. 24, 2022) ("The Court has the authority to dismiss claims that are entirely duplicative."); *Estate of Hatfield v. Cty. of Lake*, No. C 11-2396 PJH, 2012 U.S. Dist. LEXIS 74160, at *9–10 (N.D. Cal. May 29, 2012) (dismissing duplicative claim).

Here, in her Opposition, Plaintiff merely states: "if the Court finds that [Plaintiff] has adequately pled her *Monell* claim, it follows that she has adequately pled her claim for a violation of her First Amendment rights." (Doc. No. 46 at 14). The court finds it difficult to interpret this statement as anything but a concession that the two causes of action are essentially the same. This is especially true in light of the fact that a claim under *Monell* is the only means of asserting a § 1983 claim against a municipality. *See e.g., Peterson v. Allegheny Cty.*, No. 2:21-CV-00078-CCW, 2022 U.S. Dist. LEXIS 17466, at *57 n.17 (W.D. Pa. Jan. 31, 2022) ("[A] *Monell* claim is the exclusive means of pleading a 42 U.S.C. § 1983 claim against a municipality[.]"); *Cardenas v. Cty. of Alameda*, No. C 16-05205 WHA, 2017 U.S. Dist. LEXIS 66904, at *6 (N.D. Cal. May 2, 2017) ("The sole avenue of municipal liability is under *Monell*.")

For the above reasons, the court **GRANTS** the County's Motion to Dismiss Plaintiff's First Cause of Action against the County alone.  As the court is not yet convinced Plaintiff cannot provide greater clarity as to the differences between these two causes of action, the court grants the County's Motion with **LEAVE TO AMEND**.

## III.    County DOE Defendants (DOE Defendants 21–30)

The County also moves to dismiss DOE Defendants 21–30, which Plaintiff's TAC identifies as "deputies employed by SDSD."  (Doc. Nos. 44-1 at 20–21; TAC at ¶ 42).

"As a general rule, the use of 'John Doe' to identify a defendant is not favored." *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).  However, "where the identity of alleged defendants will not be known prior to the filing of a complaint . . . [a] plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds."  *Id.*  Plaintiff must nevertheless still "allege specific facts showing how each particular [DOE] defendant violated [her] rights." *Keavney v. Cty. of San Diego*, No. 3:19-cv-01947-AJB-BGS, 2020 U.S. Dist. LEXIS 128512, at *9 (S.D. Cal. July 20, 2020); *see also Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (a plaintiff must allege some factual allegations describing how each individual was "personally involved in the deprivation of [plaintiff's] civil rights.").

Here, Plaintiff's TAC alleges a single DOE Defendant, either a La Mesa police officer or SDSD Deputy, fired the projectile that struck her. *Id.* at ¶ 40.  The County does not appear to dispute that Plaintiff's allegations, at least to this single DOE Defendant, are sufficient.  *See* Doc. No. 44-1 at 20 ("Plaintiff does not allege specific facts as to how *each particular remaining DOE defendant* violated her rights.") (emphasis added).  As the County points out, however, Plaintiff's TAC, makes no specific allegations against any other DOE Defendant.  As such, Plaintiff fails to even minimally explain how the remaining unidentified parties caused a violation of her constitutional rights.

Perhaps recognizing this deficiency, Plaintiff makes some effort to describe the actions each individual DOE Defendant may have been "assumed" to have taken in her

Opposition to the County's Motion to Dismiss.  Doc. No. 46 at 15.  This description appears nowhere in Plaintiff's TAC, however, and the court therefore does not consider them.  *See e.g.*, *Candor v. United States*, 1 F. Supp. 3d 1076, 1082 (S.D. Cal. 2014) ("[I[t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (internal quotation marks omitted).

For these reasons, the court grants the County's Motion to Dismiss DOE Defendants 22–30.  The court grants the County's Motion with **LEAVE TO AMEND** to allow Plaintiff an opportunity to provide specific factual allegations as to each of the remaining nine DOE Defendants—if Plaintiff is able to.

## IV.   Request for Declaratory and Injunctive Relief

As a final matter, the County contests Plaintiff's prayer for relief with respect to Plaintiff's request for declaratory judgment and injunctive relief.  (Doc. No. 44-1 at 21–23).

Here, the court has already dismissed all of Plaintiff's causes of action against the County on other grounds.  The question, then, as to whether the remedies Plaintiff was seeking against the County for these claims are proper, is moot.  At this stage of the proceedings, it is unclear whether Plaintiff has a plausible claim against the County upon which to request declaratory or injunctive relief.

Further, the court questions the procedural propriety of the County's Motion to Dismiss what amounts to sections of Plaintiff's prayer for relief.  The County's instant Motion was brought as a Rule 12(b)(6) Motion to Dismiss.  (Doc. No. 44-1 at 1, 9–10).  Rule 12(b)(6), however, "only sanctions dismissal for failure to state a claim." *Commerce Point Capital, Inc. v. First Data Corp.*, No. 19-cv-556-W (LL), 2019 U.S. Dist. LEXIS 219409, at *26 (S.D. Cal. Dec. 20, 2019).  In contrast, Plaintiff's requests for injunctive and declaratory relief are *remedies*, not causes of action.  *See Ajetunmobi v. Clarion Mortg. Capital, Inc.*, 595 F. App'x 680, 684 (9th Cir. 2014) ("Declaratory and injunctive relief are remedies, not causes of action."); *Huynh v. NorthBay Med. Ctr.*, No. 2:17-cv-2039-EFB PS, 2018 U.S. Dist. LEXIS 164654, at *12–13 (E.D. Cal. Sep. 25,

2018) ("Injunctive relief is a remedy derived from the underlying claims and not an independent claim in itself.").

As potential remedies, and not standalone claims, Plaintiff's requests for injunctive and declaratory relief are not subject to dismissal under Rule 12(b)(6). *Commerce*, 2019 U.S. Dist. LEXIS 219409, at *27 ("Because a 12(b)(6) motion to dismiss challenges the legal sufficiency of the pleadings, not the appropriateness of the relief sought, a motion to dismiss is not the proper mechanism to challenge a prayer for relief."); *Casey v. City of Santa Rosa*, No. 4:18-cv-07731-KAW, 2019 U.S. Dist. LEXIS 103634, at *15 (N.D. Cal. June 20, 2019) ("[A] motion to dismiss pursuant to Rule 12(b)(6) is not the proper vehicle for challenging a prayer for relief."); *Minkley v. Eureka City Sch.*, No. 17-cv-3241-PJH, 2017 U.S. Dist. LEXIS 161338, at *44 (N.D. Cal. Sep. 29, 2017) (request for injunctive relief is "not subject to dismissal under Rule 12(b)(6)"); *Elias v. Navasartian*, No. 1:15-cv-01567-LJO-GSA-PC, 2017 U.S. Dist. LEXIS 23229, at *9 (E.D. Cal. Feb. 17, 2017) ("Recent court decisions have held that because a prayer for relief is a remedy and not a claim, a Rule 12(b)(6) motion to dismiss for failure to state a claim is not a proper vehicle to challenge a plaintiff's prayer for punitive damages, because Rule 12(b)(6) only countenances dismissal for failure to state a claim.") (collecting cases); *Jordan v. United States*, No. 15-cv-1199 BEN (NLS), 2015 U.S. Dist. LEXIS 138604, at *6 (S.D. Cal. Oct. 8, 2015) (A "prayer for relief does not provide any basis for dismissal under Rule 12.").

Regardless of the merits of the County's contentions regarding the deficiencies in Plaintiff's requests for declaratory and injunctive relief, such questions have been mooted against the County, and are also not properly raised on the County's Rule 12(b)(6) Motion. For these reasons, the County's Motion to Dismiss these remedies under Rule 12(b)(6) is **DENIED.**

## CONCLUSION

For the reasons stated above, the court **GRANTS-IN-PART** and **DENIES-IN-PART** the County's Motion to Dismiss as follows:

20

1.    The County's Motion to Dismiss Plaintiff's First Cause of Action is **GRANTED** against the County only;

2.    The County's Motion to Dismiss Plaintiff's Third Cause of Action is **GRANTED** against the County only;

3.    The County's Motion to Dismiss DOE Defendants 21–30 is **GRANTED** against DOE Defendants 22-30 only;

4.    The County's Motion to Dismiss Plaintiff's request for injunctive and declaratory relief under Rule 12(b)(6) is **DENIED**.

Leave to amend **is GRANTED**.  Should Plaintiff elect to file a Fourth Amended Complaint, she must do so **within thirty days** of the docketing of this Order.

**IT IS SO ORDERED.**

DATED: December 23, 2022

_____

JEFFREY T. MILLER
United States District Judge

21cv565 JM (MDD)